**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1804-22

PETER PALUCH,

    Plaintiff-Appellant,

v.

CUNA MUTUAL GROUP,
CMFG LIFE INSURANCE
COMPANY, and NOVA
CREDIT UNION,

    Defendants-Respondents.

_____

Submitted October 1, 2024 – Decided October 24, 2024

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5441-20.

Schenck, Price, Smith & King LLP, attorneys for appellant (Eric A. Inglis, on the briefs).

Faegre Drinker Biddle & Reath LLP, attorneys for respondents (Kate L. Villanueva and Jamie M. Campisi, on the brief).

PER CURIAM

Plaintiff Peter Paluch appeals from a January 6, 2023 Law Division order granting summary judgment to defendants—CMFG Life Insurance Company (CMFG), CUNA Mutual Group (CUNA), and Nova Credit Union (Nova)—and dismissing his complaint with prejudice. Based on our thorough review of the record and prevailing law, we affirm in part and reverse and remand in part.

I.

In reviewing the trial court's order granting summary judgment to defendants, we glean the following salient facts from the motion record, viewed in the light most favorable to plaintiff as the non-moving party. On March 9, 2010, plaintiff and his wife, Lesia,[1] each submitted applications through CUNA to obtain a CMFG long-term care insurance policy (the policy). Both plaintiff and Lesia chose to pay their policy premiums quarterly through automatic withdrawals from the couple's jointly held Nova bank account on the twenty-sixth day of the payment month. Doing so afforded plaintiff and Lesia six percent discounts on their premium payments. Plaintiff's discounted quarterly policy premium payment was $1,236.46, and Lesia's was $1,055.14.

---

[1] Because plaintiff and his wife share a surname, we refer to Lesia by her first name, and intend no disrespect in doing so.

A-1804-22

The policy contained a provision explaining coverage remained in effect "as long as [the insured] pay[s] [their] premium on time." In the event of non-payment, coverage under the policy would terminate at 12:01 a.m. on the sixty-sixth day after the default date.

The policy contained procedures for reinstatement in the event of termination due to non-payment. Section 7.8 titled "REINSTATEMENT DUE TO UNINTENTIONAL LAPSE," states that coverage would be reinstated if the policyholder provided "adequate proof" they were chronically ill at the time of the lapse. Absent such proof, a policyholder could request discretionary reinstatement within five months of the policy termination, to be considered by CMFG upon payment of any past-due premiums.

One of plaintiff's quarterly premium payments was due on October 1, 2017. The transaction could not be completed because there were insufficient funds in plaintiff's account.

In an October 30, 2017 letter, CMFG notified plaintiff his "premium payment in the amount of $1,236.46 [was] returned due to insufficient funds." CMFG placed the policy on "direct quarterly billing," which removed the six percent discount. The letter further advised plaintiff would be receiving an

3

invoice in the mail for the full quarterly premium amount of $1,420.61.[2] Plaintiff was also directed to call CMFG as soon as possible if he wished to opt back into automatic withdrawal with the accompanying discount.

On October 31, Lesia called CMFG. The parties disagree as to what was discussed during the call. Plaintiff maintains that Lesia called CMFG on behalf of both herself and plaintiff to ask CMFG to reprocess the quarterly premium withdrawals for each of their policies since they had placed sufficient funds in their bank account. Plaintiff alleges he "was close by during the call and heard [Lesia's] side of the conversation and an occasional audible response from the person on the other end of the line." Plaintiff states he heard Lesia receive "personal assurance" that both policies would remain in "full force and effect."

Contemporaneous notes documented within CMFG's customer management system indicate Lesia only asked to have her own policy placed back on automatic withdrawal since she had sufficient funds in her account to

---

[2] Defendants contend there was no increase in plaintiff's policy premium but, rather, the $1,420.61 bill reflected the $1,236.46 quarterly payment, without the six percent automatic withdrawal discount. However, if the six percent discount was removed from the full quarterly payment, the new payment amount would be $1,335.38. Neither the parties nor the trial court addresses the mathematical calculation.

4

cover the cost. CMFG's notes do not evidence plaintiff's account was discussed during that call, and plaintiff's customer management profile does not have a corresponding entry related to his account.

On November 5, CMFG mailed plaintiff an invoice for $1,420.61, the full amount of the premium payment due on October 1. The invoice included a "lapse notice" which alerted plaintiff his coverage would be "terminated due to non-payment of [the] required premium" if full payment was not made by the expiration of the sixty-five-day grace period. Plaintiff and Lesia certified they called CMFG again in the weeks after the October 31 phone call and were told the policy issues were rectified.

After the sixty-five-day grace period expired, CMFG terminated plaintiff's coverage. Plaintiff was not aware his policy was terminated until the next premium payment was due for Lesia's policy.

On February 6, 2018, plaintiff called CMFG and asked that his policy be reinstated. A few days later, CMFG sent plaintiff a letter advising his policy could be considered for reinstatement if he completed an application, provided medical records for the past three years, and paid the outstanding balance due on his account, which at that point totaled $2,841.22.

On February 19, plaintiff responded in writing and expressed "concerns as to [CMFG's] operational procedures and breach of [their] agreement." Plaintiff alleged in the letter that Lesia called to reinstate his policy and attached a completed reinstatement form, but did not include his medical records because "[t]here ha[d] been no change in [his] medical condition." Plaintiff requested again that both his policy and Lesia's "should be set up for direct withdrawals from [his] . . . account at $1,055.14 for [Lesia] and $1,236.46 for [plaintiff], to be deducted on the last business day of the billing quarter."

On April 24, 2018, CMFG sent plaintiff another letter reiterating he could be considered for reinstatement if he completed an application, provided his medical records for the past three years, and paid the outstanding balance due on his account, which then totaled $4,261.83.  On May 10, plaintiff replied to that letter by completing the application CMFG sent him, noting on the document that he had "periodic medical exams" and enclosing a "visit summary" from a recent medical examination.  In an accompanying letter, plaintiff stated he "trust[s] that [CMFG] will address this issue . . . and adhere to [the] previous payment agreement; a quarterly premium of $1,236.46 debited quarterly from [the] account."  Plaintiff further explained that both his

6

and Lesia's "policies should be set up for direct withdrawal from [the] account," and provided the account number and routing number again. No payment accompanied the letter.

Once more, CMFG responded in a letter reiterating plaintiff could be considered for reinstatement if he completed another application, provided medical records for the past three years, and paid the outstanding balance due on his account, which had mounted to $7,103.05.

A few months later, CMFG sent a letter to plaintiff offering to reinstate the policy upon receipt of his outstanding premiums, without requiring additional medical information or records.[3] Plaintiff did not respond to that letter and, instead, filed a five-count complaint alleging: (1) breach of contract, (2) violation of the covenant of good faith and fair dealing, (3) common law fraud, (4) rescission of a contract, and (5) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228.

The trial court granted summary judgment to defendants in an oral decision, finding the fraud claims had not been pleaded with sufficient particularity and dismissing the remainder of the claims because "plaintiff had

---

[3] The parties did not include this letter in their appendices.

A-1804-22

an obligation to pay premiums and did not."  A memorializing order was entered the same day.  This appeal follows.

## II.

We review a trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court.  See Samolyk v. Berthe, 251 N.J. 73, 77 (2022).  We are tasked with determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (internal quotation marks omitted) (quoting Samolyk, 251 N.J. at 78).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

We turn first to plaintiff's argument that the trial court erred in granting summary judgment and dismissing the common law fraud and CFA claims, based on the failure to plead them with the required specificity. On this issue, we affirm.

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). The sale of insurance policies is covered by the CFA. Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 265 (1997). Under the CFA, an unlawful practice is defined as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged . . . .

> [N.J.S.A. 56:8-2.]

The elements of a common law fraud claim are: (1) a representation or omission of a material fact; (2) made with knowledge of its falsity; (3) made with the intention that the representation or omission be relied upon; (4) reasonable reliance on the representation or omission; and (5) damages. DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013). When a plaintiff alleges fraud—under the CFA or the common law—the heightened pleading requirement under Rule 4:5-8(a) mandates that "all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009).

Plaintiff's allegations that he and Lesia were assured by a representative of CMFG that both of their policies were reinstated does not meet this heightened pleading standard. Aside from plaintiff's sweeping assertion that "CMFG dropped [his coverage] on purpose to limit its exposure to an insurance product that is widely viewed in the insurance industry as a losing proposition for carriers," plaintiff does not proffer any specifics as to what representation or omission a CMFG representative made to him with

knowledge of its falsity, as required to sustain a claim for common law fraud under <u>DepoLink</u>, 430 N.J. Super. at 336. Plaintiff's assertion mirrors the argument in <u>Hoffman</u>, which this court rejected as insufficient to meet the heightened pleading standards under <u>Rule</u> 4:5-8(a). 405 N.J. Super. at 114. Summary judgment also was appropriate because plaintiff failed to provide proofs substantiating his broad allegation in opposition to defendants' motion.

Although defendants also contend plaintiff's fraud claims are barred under the economic loss doctrine, this issue was not argued to the trial court. Since we affirm the trial court's order on other grounds, we decline to address this argument.

IV.

Our de novo review leads us to reverse and remand to the trial court for further proceedings on plaintiff's breach of contract claim. To establish liability for breach of contract, a plaintiff must prove by a preponderance of the evidence

> [F]irst, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff."

[Globe, 225 N.J. at 482 (first, third, fourth, and fifth alterations in original) (quoting Model Jury Charge (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)).

Viewing the facts in plaintiff's favor, as we must, plaintiff complied with the contractual terms when he asked, through Lesia's telephone conversation with CMFG, that his policy be reinstated within the sixty-five-day grace period and the discounted quarterly premium be withdrawn from his bank account. CMFG failed to adhere to its promise to plaintiff and, as a result, breached its agreement to reinstate. In light of this material factual dispute, the trial court improvidently granted summary judgment.

Although the trial court found plaintiff did not perform his obligations under the contract as required to succeed on a claim for breach of contract by failing to pay the outstanding premium, a fact-finder may determine the lack of payment in this case is justified. Viewing the facts in the light most favorable

12

to plaintiff, if CMFG failed to deduct the discounted quarterly premium in the amount of $1,236.46 from plaintiff's bank account as promised during the October 31 telephone call, CMFG may be found in breach. Although plaintiff may still owe the discounted quarterly payments that have accrued to date, his failure to pay the higher amount demanded by CMFG may be excused.

We, therefore, reverse and remand to the trial court for appropriate proceedings to resolve the factual issue at the heart of this dispute.

V.

Since we reverse the summary judgment granted on plaintiff's breach of contract claim, we address plaintiff's claim for breach of the duty of good faith and fair dealing implied in the contract. Based on our review, we affirm the trial court's dismissal on summary judgment.

Under our decisional law, "[a] covenant of good faith and fair dealing is implied in every contract . . . ." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997)). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting Wilson, 168 N.J. at 251). To succeed, the party claiming a breach of the covenant of good faith and fair

13

dealing "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Wilson, 168 N.J. at 251 (internal quotation marks omitted) (quoting 23 Williston on Contracts § 63:22 (Lord ed., 2002)). "'[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive.'" Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (quoting Wilson, 168 N.J. at 251).

Plaintiff advances the unsupported argument CMFG had a bad motive or intention because it "saw an opportunity to eliminate a potential long-term care liability to an older male and it took advantage of that opportunity by failing to act on [plaintiff's] request to restore the [p]olicy." The record contains only sweeping accusations and legal conclusions on this issue which are insufficient to defeat summary judgment.

We discern nothing in the record to suggest that summary judgment was improvidently granted to CUNA and Nova. Plaintiff's merits brief also does not address count four, rescission of contract that was the product of fraud. Thus, we consider the issue abandoned pursuant to Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-1804-22

Affirmed in part, reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1804-22